**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SARAH DEBOER,**

                  **Plaintiff,**                           5:11-cv-1359
                                                                                  (GLS)

                  **v.**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                  **Defendant.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                      KAREN S. SOUTHWICK, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN       TOMASINA DIGRIGOLI
United States Attorney                Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Sarah DeBoer challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering DeBoer's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On July 27, 2009, DeBoer filed an application for DIB under the Social Security Act ("the Act"), alleging disability since January 5, 2004. (*See* Tr.[1] at 212-13.) After her application was denied, (*see id.* at 97-102), DeBoer requested a hearing before an Administrative Law Judge (ALJ), which was held on December 20, 2010. (*See id.* at 29-70, 103-04.) At the close of the hearing, the ALJ requested that DeBoer submit to additional consultative examinations in order to further develop the record, which she did attend. (*See id.* at 69, 521-58.) Thereafter, a second administrative hearing was held. (*See id.* at 71-94.) On May 13, 2011, the ALJ issued an

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 11.)

unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-6, 9-28.)

DeBoer commenced the present action by filing her Complaint on November 17, 2011 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 9, 11.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 14, 15.)

### III. **Contentions**

DeBoer contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 14 at 12-22.) Specifically, DeBoer claims that the: (1) residual functional capacity (RFC) is unsupported by substantial evidence and is the product of legal error; (2) ALJ failed to apply the appropriate legal standards in assessing her credibility; and (3) step five determination is unsupported by substantial evidence and is the product of legal error. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (*See* Dkt. No. 15 at

3

10-25.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 14 at 3-10; Dkt. No. 15 at 2-10.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

Initially, DeBoer contends that the ALJ's RFC determination "is unsupported by substantial evidence and is the product of legal error." (Dkt. No. 14 at 12). According to DeBoer, the ALJ erred in failing to obtain a function-by-function opinion from her treating physician, C. Perry Cooke. (*See id.* at 12-14.) In addition, DeBoer argues that the ALJ failed to adopt

4

the opinion of consultative examiner Kalyani Ganesh and, instead, substituted her own judgment for that of an expert medical opinion. (*See id.* at 14-15.) Conversely, the Commissioner argues that the ALJ's RFC determination is not tainted by error and is supported by substantial evidence. (*See* Dkt. No. 15 at 13-19.)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[2] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

DeBoer claims that by failing to obtain a function-by-function report from Dr. Cooke the ALJ failed to fulfill her duty to "create a complete

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

medical record before making a disability determination." (Dkt. No. 14 at 13.) While DeBoer is correct in stating that "the ALJ . . . has an affirmative obligation to develop the administrative record," *Perez v. Chater*, 77 F.3d at 47, it is also true that this obligation is not limitless. Indeed, where there are no obvious gaps, and the record presents "a 'complete medical history,'" the ALJ is under no duty to seek additional information before rejecting a claim. *Rosa v. Callahan,* 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing *Perez*, 77 F.3d at 48).

Here, DeBoer began seeking treatment for ongoing pain in her right shoulder in May 2004. (*See* Tr. at 489.) Thereafter, an MRI revealed a "[r]otator cuff tear with attenuation of the tendon but non-retraction of the tendon." (*Id.* at 382.) In September 2004, DeBoer began seeing Dr. Cooke for treatment of her right shoulder and, subsequently, underwent a right shoulder examination under anesthesia and arthroscopy, rotator cuff repair, and decompression. (*See id.* at 368-71, 383-84.) Following the procedure, DeBoer continued to see Dr. Cook for follow-up treatment on her right shoulder until February 2005. (*See id.* at 339-45, 354-56, 361-63.) On treatment notes, Dr. Cooke indicated that DeBoer was "[t]emporarily [totally] disabled" but also noted that "her symptoms

continue[d] to improve" and she was "[d]oing well."  (*Id.* at 339, 341, 345, 356, 363.)  Beginning in November 2004, DeBoer began complaining to Dr. Cooke of pain in her left shoulder.  (*See id.* at 357-60.)  DeBoer continued to seek treatment from Dr. Cooke for her left shoulder pain through December 2004, including receiving a steroid injection in that shoulder.  (*See id.* at 349.)  While the record contains treatment notes and records from Dr. Cooke reflecting the above medical history, it does not contain his medical source statement or opinion as to DeBoer's functional limitations.

    Here, the court is satisfied that further development of the record was unnecessary.  Indeed, the ALJ fulfilled her obligation to develop the record by requesting, after the first administrative hearing, that DeBoer, who was represented by counsel, attend multiple consultative exams and explaining to her that "the testimony . . . is not exactly consistent with what the medical records show right now . . . [s]o in order for me to accurately assess what your allegations are, I'm going to need some kind of evidence."  (Tr. at 68-69.)  Accordingly, Dr. Ganesh conducted a second consultative exam of DeBoer in January 2011.[3]  (*See* Tr. at 535-40, 548-

---

[3] Dr. Ganesh had previously examined DeBoer in September 2009, and opined that "[n]o gross physical limitation [was] noted to sitting, standing, walking, or the use of upper extremities."  (Tr. at 403.)  With

7

51.) On medical source statements completed thereafter, Dr. Ganesh opined that DeBoer could continuously lift and carry up to 100 pounds, reach in all directions, handle, finger, feel, push and pull. (*See id.* at 541, 543, 552, 554.) Further, he found that DeBoer could continuously climb stairs and ramps, climb ladders or scaffolds, balance, and stoop, but could only occasionally kneel, crouch, or crawl. (*See id.* at 544, 555.)

The ALJ found that DeBoer could "perform light work . . . subject to the need to sit or stand at will." (Tr. at 19); *see* 20 C.F.R. § 404.1567(b) (defining light work). With respect to DeBoer's physical abilities, the ALJ determined that she "does not retain the capacity to climb ladders, ropes or scaffold at all, or to climb ramps or stairs on more than an occasional basis." (*Id.*) Further, she found that DeBoer "is able to stoop, kneel, crouch, or crawl occasionally." (*Id.*) In making this RFC determination, the ALJ stated that she did "not adopt" the medical source statement of Dr. Ganesh. (*Id.* at 21.) According to DeBoer, the failure to adopt Dr. Ganesh's opinion coupled with the lack of any other medical opinion

---

respect to her upper extremities, Dr. Ganesh found that plaintiff had full range of motion in her shoulders, elbows, forearms and wrists bilaterally and muscle strength was 5/5. (*See id.*) Finally, Dr. Ganesh found that Deboer's hand and finger dexterity were intact and her grip strength was 5/5 bilaterally. (*See id.*)

supporting the ALJ's RFC determination requires remand. (*See* Dkt. No. 14 at 14-15.) Indeed, "'the ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983). Accordingly, "'while an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [s]he is not free to set h[er] own expertise against that of a physician who [submitted an opinion to or] testified before h[er].'" *Id.* "Where application of the correct legal principles to the record could lead to only one conclusion," however, "there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Here, the ALJ's findings as to DeBoer's exertional limitations were more restrictive than those of Dr. Ganesh. (*Compare* Tr. at 19 *with id.* at 541-44, 552-55.) Accordingly, and contrary to DeBoer's contentions, Dr. Ganesh's opinion supports the ALJ's determination that she could perform light work. (*See id.* at 19.) Thus, the ALJ had before her substantial evidence that enabled her to render a decision.

### B. Credibility Determination

9

Next, DeBoer contends that the ALJ failed to apply the appropriate legal standards in assessing her credibility. (*See* Dkt. No. 14 at 15-19.) Specifically, DeBoer claims that the ALJ failed to adequately consider the side effects of her medications, her lack of health insurance, and her symptoms of mania on her ability to maintain treatment for, as well as adequately report the limitations caused by, her impairments. (*See id.* at 16-18.) In addition, DeBoer argues that the ALJ improperly considered the credibility implications of her activities of daily living and claims for unemployment benefits. (*See id.* at 18-19.) The Commissioner counters that the ALJ properly considered DeBoer's subjective complaints and did not err by concluding that they were not fully credible. (*See* Dkt. No. 15 at 19-22.) Because the ALJ's assessment was sufficiently articulate and based on substantial evidence, the court agrees with the Commissioner.

An ALJ must consider a claimant's subjective complaints of limitations resulting from her impairments, including those from pain, in gauging her RFC. *See* 20 C.F.R. § 404.1545(a)(3). However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). The Commissioner is obligated to evaluate all of a claimant's symptoms,

10

"including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485-86 (July 2, 1996). Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as she sets forth her "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

In this case, the ALJ's determination that the evidence of record "does not fully support the functional limitations" DeBoer ascribed to her medically determinable impairments is supported by substantial evidence in the record. (Tr. at 20.) The ALJ considered DeBoer's self-reported activities of daily living, her ability to work during the period of alleged disability, the fact that she applied for and received unemployment benefits

during the period of alleged disability, and the medical evidence of record. (*See id.* at 20-22.) Notably, DeBoer worked as a manager at a furniture store from December 2005 until September of 2008, when her job was eliminated as the store she worked for closed. (*See id.* at 38, 229, 243, 305, 401.) Further, DeBoer reported that she regularly watches television, uses her computer, does cleaning and laundry, prepares and cleans up after meals for herself and her daughter, helps care for her dog and various stray cats, has no difficulties maintaining her personal hygiene, and drives and shops weekly. (*See id.* at 56-57, 266-67, 269, 275.) Contrary to DeBoer's arguments, an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that she was ready, willing, and able to work during the time period for which she claims disability benefits as one factor relevant to assessing her credibility. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Andrews v. Astrue*, Civ. No. 7:10-CV-1202, 2012 WL 3613078, at *12-13 (N.D.N.Y. Aug. 21, 2012); *House v. Comm'r of Soc. Sec.*, No. 09-CV-913, 2012 WL 1029657, at *12 (N.D.N.Y. Feb. 29, 2012).

**C.** **Vocational Expert**

Finally, DeBoer takes issue with the ALJ's finding at step five. (S*ee*

Dkt. No. 14 at 19-22.) Specifically, DeBoer alleges that the hypothetical question posed to the vocational expert (VE) was the product of errors in determining her RFC and assessing her credibility. (*See id.* at 19-20.) Further, DeBoer argues that the ALJ failed to identify and resolve a conflict between the VE's testimony and the U.S. Department of Labor's Dictionary of Occupational Titles (DOT). (*See id.* at 20-22.) The Commissioner counters that the ALJ's hypothetical question was consistent with her RFC assessment and, further, there was no discrepancy between the DOT and the VE's testimony. (*See* Dkt. No. 15 at 22-25.) Again, the court agrees with the Commissioner.

In making her ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c); *accord White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). If the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for her to rely on that RFC assessment in questioning the VE. *See Mancuso v. Astrue*, 361 F. App'x 176,179 (2d Cir. 2010). In addition to the RFC assessment, the ALJ must also rely on the claimant's age, education, past work experience, and the transferability of the claimant's

skills in order to assess whether other jobs exist in the national economy which the claimant could perform. *See* 20 C.F.R. § 404.1520(g).

In questioning the VE in this case, the ALJ's hypothetical question accurately reflected her RFC assessment and credibility determination which, as discussed above, were supported by substantial evidence. (*Compare* Tr. at 87-88, *with id.* at 19.) As a result, the ALJ's use of the VE's opinion was appropriate. (*See id.* at 23, 88-89.) Further, although DeBoer correctly notes that "[w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions," SSR 85-15 does not direct a finding of disabled where a claimant cannot be exposed to environmental irritants. SSR 85-15, 1985 WL 56857, at *8 (1985). Rather, where environmental restrictions significantly diminish a claimant's ability to work the ALJ should consult with a VE before making a determination as to disability. *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986); SSR 85-15, 1985 WL 56857, at *8.

Here, the ALJ consulted with a VE who testified that DeBoer could perform the work of a mail sorter, packer, and silver wrapper. (*See* Tr. at

14

88-89.) Although DeBoer argues that this testimony conflicts with the DOT as the work of a packer requires frequent exposure to atmospheric conditions such as fumes, noxious odors, dusts, mists, gasses, and poor ventilation, the VE specifically noted that the number of packer jobs available to DeBoer would be reduced by fifty percent due to her environmental limitations. (*See* Dkt. No. 14 at 20; Tr. at 89.) Even if there was such a conflict, the VE identified two other jobs as compatible with Deboer's limitations and the finding of one job is sufficient to demonstrate that there is other work that she could perform. *See* 20 C.F.R. § 404.1566(b); *Martin v. Comm'r of Soc. Sec.,* No. 5:06-CV-720, 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008). Thus, DeBoer's claim that the VE's testimony did not constitute substantial evidence supporting the ALJ's finding that other work existed for her is meritless.

## D.  Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

DeBoer's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 5, 2012
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court